E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorney
Deputy Chief, General Crimes Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Major Frauds Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2400
    Facsimile:  (213) 894-0141
    E-mail:      joshua.mausner@usdoj.gov
           ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-0059-DMG |
|     Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
|       v. | Trial Date: January 24, 2023 |
| CATALINO ESTEBAN VALIENTE ALONZO, | Trial Time: 8:30 a.m.<br>Location:   Courtroom of the Hon.<br>           Dolly M. Gee |
|     Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Joshua O. Mausner and Ali Moghaddas, hereby submits its Trial Memorandum.

//

//

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

TABLE OF AUTHORITIES..............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.   STATEMENT OF CHARGES AND CASE STATUS..........................1

II.  RELEVANT FACTS................................................1

III. ELEMENTS OF THE OFFENSE.......................................3

IV.  STATEMENT OF CASE.............................................4

     A.   Government's Case-in-Chief Witnesses.....................4

     B.   Government's Exhibits....................................6

     C.   Defendant's Case-in-Chief Witnesses.....................7

     D.   Government's Rebuttal Case...............................8

V.   LEGAL AND EVIDENTIARY ISSUES..................................8

     A.   Documentary Evidence.....................................8

          1.   Defendant's Guatemalan Criminal Conviction
               Records are Self-Authenticating and Admissible......8

          2.   Defendant's A-File and Other Public Records are
               Also Self-Authenticating and Admissible............10

          3.   Duplicates and Copies..............................12

          4.   English Translations of Spanish Language Records...12

     B.   Stipulations............................................13

     C.   Defendant's Experts Cannot Testify to Defendant's and
          Others' Hearsay.........................................14

     D.   Cross-Examination of Defendant..........................16

     E.   Defendant's Prior Statements............................16

          1.   Admissible When Offered by the Government...........16

          2.   Inadmissible When Offered by Defendant.............17

          3.   Defendant's Prior Inconsistent Statements and
               Waiver of Privilege...............................17

## <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                <u>PAGE</u>

     F.   Jury Nullification.......................................19

     G.   Character Evidence......................................20

     H.   Reciprocal Discovery...................................23

VI.  CONCLUSION.................................................24

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

Cases

Crawford v. Washington,
    541 U.S. 36 (2004) .............................................. 11

Michelson v. United States,
    335 U.S. 469 (1948) ............................................ 21

Ohler v. United States,
    529 U.S. 753 (2000) ............................................ 16

United States v. Angelini,
    678 F.2d 380 (1st Cir. 1982) ................................... 21

United States v. Armijo,
    5 F.3d 1229 (9th Cir. 1993) .................................... 13

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) .................................. 16

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992) ................................... 16

United States v. Diaz,
    961 F.2d 1417 (9th Cir. 1992) .................................. 21

United States v. Doyle,
    130 F.3d 523 (2d Cir. 1997) .................................... 22

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) ................................... 17

United States v. Font-Ramirez,
    944 F.2d 42 (1st Cir. 1991) .................................... 13

United States v. Fuentes-Montijo,
    68 F.3d 352 (9th Cir. 1995) .................................... 12

United States v. Garcia,
    793 F.3d 1194 (10th Cir. 2015) ................................. 15

United States v. Hedcorth,
    873 F.2d 1307 (9th Cir. 1989) .................................. 21

United States v. Hernandez-Herrera,
    273 F.3d 1213 (9th Cir. 2001) .................................. 10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Loyola-Dominguez,
    125 F.3d 1315 (9th Cir. 1997) ....................................... 10

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ......................................... 23

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) ....................................... 16

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ........................................ 17

United States v. Pena-Espinoza,
    47 F.3d 356 (9th Cir. 1995) ......................................... 13

United States v. Plache,
    913 F.2d 1375 (9th Cir. 1990) ....................................... 19

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992) ....................................... 20

United States v. Rueda-Rivera,
    396 F.3d  (5th Cir. 2005) ........................................... 11

United States v. Santos,
    947 F.3d 711 (11th Cir. 2020) ....................................... 11

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990) ....................................... 12

United States v. Solano-Godines,
    120 F.3d 957 (9th Cir. 1997) ........................................ 12

United States v. Taghipour,
    964 F.2d 908 (9th Cir. 1992) ........................................ 12

United States v. Thomas,
    134 F.3d 975 (9th Cir. 1998) ........................................ 22

United States v. Vera,
    770 F.3d 1232 (9th Cir. 2014) ....................................... 15

United States v. Vizcarra-Martinez,
    66 F.3d 1006 (9th Cir. 1995) ......................................... 9

Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.,
    647 F.2d 18 (9th Cir. 1981) ......................................... 19

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                  PAGE

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992) .........................................20

Statutes

18 U.S.C. § 1546(a) ...................................................1, 4

18 U.S.C. § 3505.......................................................6, 7

Rules

Fed. R. Evid. 103.......................................................12

Fed. R. Evid. 403........................................................9

Fed. R. Evid. 404(a)....................................................21

Fed. R. Evid. 405.......................................................22

Fed. R. Evid. 405(a)................................................21, 23

Fed. R. Evid. 703.......................................................15

Fed. R. Evid. 801(d)(2)(A)..............................................16

Fed. R. Evid. 902(1)....................................................10

1     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.   STATEMENT OF CHARGES AND CASE STATUS**

3        Defendant Catalino Esteban Valiente Alonso ("defendant") is

4   charged in the single-count Indictment with knowing use of a Lawful

5   Permanent Resident ("LPR") card that was procured by means of a false

6   claim or statement, in violation of 18 U.S.C. § 1546(a).

7        Jury trial is set for January 24, 2023 at 8:30 a.m.  The

8   government anticipates calling three witnesses in its case-in-chief,

9   which it expects to last approximately one to two trial days.  Based

10  on counsel's representations, the government understands that the

11  defense will call up to three witnesses in its case-in-chief.

12  Depending on the defense's case, the government may present a short

13  rebuttal case, which may include one to two witnesses.

14  **II.  RELEVANT FACTS**

15       In the 1980s, defendant was Chief of the National Police in

16  Quetzaltenango, the second largest city in Guatemala.  In October

17  1987, shortly after defendant ordered an "investigation" into two

18  political dissidents associated with anti-police protests at local

19  universities, Danilo Sergio Alvarado Mejia and Rene Leiva Cayax were

20  kidnapped in broad daylight by police officers.  Days later, their

21  bodies were recovered in separate locations on the side of the road,

22  just outside the city limits.  They had been beaten and tortured

23  prior to being killed.

24       In November 1987, defendant was interviewed as part of the

25  investigation, and later provided three statements to investigating

26  officers.  In December 1987, defendant was arrested, along with a

27  number of his subordinate police officers, and appeared before the

28  Thirteenth Judge of Peace of the Criminal Branch who made defendant

aware that he was "detained, attributed to the crimes of abduction and murder, with the offended parties being Danilo Sergio Alvarado Mejia and Rene Arnoldo Leiva Cayax."  Defendant was formally charged with kidnapping and murder on December 7, 1987, and ordered imprisoned.  He remained in custody for approximately two-and-a-half years during the pendency of the proceedings.

In 1989, defendant was convicted in the Guatemalan trial court of double murder.[1]  He was sentenced to 30 years in prison and ordered to pay 15,000 quetzals (approximately $6,000) to the victims' families.

In 1990, an intermediate appellate court overturned the convictions, dismissed the charges, and released defendant from custody.

Immediately after his release from custody, defendant fled Guatemala.  Shortly after his release from custody, on August 30, 1990, defendant entered the United States at the San Ysidro point of entry.  Five days later, defendant filed, under penalty of perjury, an I-589 application for asylum.  In his response to question 36 on the application, which asked "Have you ever been detained / interrogated / convicted and sentenced / imprisoned in any country?" defendant checked the "No" box.  Underneath the "No" box, in a space to provide additional information, defendant also handwrote "None."

In March 1993, the Supreme Court of Guatemala vacated the decision of the intermediate appellate court, reinstated defendant's murder convictions, and issued a warrant for defendant's arrest.

---

[1] The trial court acquitted defendant of the kidnapping charges.

2

Four years later, in September 1997, defendant filed, under penalty of perjury, a form I-485 application for adjustment of status to LPR.  In response to Part 3, Question 1, which asked "Have you ever, in or outside the U.S. been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?" defendant checked the "No" box. Defendant was subsequently interviewed, in person, by an Adjudications Officer with USCIS, who went through defendant's answers on his I-485 application for adjustment of status to LPR, at which time defendant again swore, under oath, that the answers were true and accurate.  Based on this false statement, defendant's application to adjust his status was approved and he was issued an LPR card (commonly referred to as a "green card").

As charged in the Indictment, defendant then used that LPR card, which he knew was obtained by means of a false claim and statement, to travel, including presenting the LPR card to re-enter the United States at Los Angeles International Airport on April 29, 2013.

## III. ELEMENTS OF THE OFFENSE

For the defendant to be found guilty of use of possession of an LPR card obtained by false statement, the government must prove each of the following elements beyond a reasonable doubt:

(1) Defendant knowingly possessed or used a document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States; and

(2) Defendant knew the document to have been procured by means of any false claim or statement, otherwise procured by fraud, or unlawfully obtained.

3

Model Ninth Circuit Instruction 15.44 [Immigration Fraud – Use or Possession of Immigration Document Procured by Fraud (18 U.S.C. § 1546(a)].

The government must show that defendant acted knowingly and not due to mistake or accident:

> An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident.  The government is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

Model Ninth Circuit Instruction 4.8 [Knowingly].

IV.  **STATEMENT OF CASE**

A.  **Government's Case-in-Chief Witnesses**

The government anticipates calling three witnesses in its case-in-chief, as follows:

- Dr. Alexander Aizenstad will testify as an expert regarding defendant's prior criminal proceedings in Guatemala.  Dr. Aizenstad will testify as to the nature of the allegations against defendant, the proceedings in the trial, appellate, and Supreme Court of Guatemala, the convictions and sentence, and the issuance of warrants after defendant fled from Guatemala.  Dr. Aizenstad will also testify as to the context of defendant's prosecution in Guatemala, including that defendant's case was the first in which a police officer was charged and convicted in Guatemala.  This Court previously ruled Dr. Aizenstad's testimony admissible and proper expert testimony.  See Order Re: Government's and Defendant's *Motions in Limine* and Defendant's Motion to Dismiss (Dkt. 88), at *4 ("the

Court independently finds that he is qualified as an expert to: (1) testify regarding Guatemalan criminal legal procedures; (2) explain the certified records regarding Defendant's criminal proceedings; and (3) testify regarding the nature of Defendant's case as being the first in which officers were criminally prosecuted in Guatemala"). The government expects direct examination to last approximately 60 to 90 minutes. Defense counsel has advised they expect cross-examination to last the same amount of time as direct examination.

- Retired U.S. Citizenship and Immigration Services ("USCIS") Adjudications Officer Gary Tate will testify regarding defendant's application for Lawful Permanent Resident ("LPR") status, which he adjudicated. He will testify that he reviewed defendant's A-file, interviewed defendant, and granted his I-485 application for LPR status. He will also testify that, had defendant disclosed his prior criminal history in Guatemala, as opposed to marking "No" and reaffirming that response in his under oath, in-person interview, he would not have summarily granted defendant's application. The government expects direct examination to last approximately 45 to 60 minutes. Defense counsel has advised they expect cross-examination to last the same amount of time as direct examination.

- Customs and Border Patrol ("CBP") Officer Darren Herrera will testify that he was the officer on duty at Los Angeles International Airport ("LAX") on August 29, 2013, when defendant returned to LAX from an international flight. He

1    will testify regarding defendant's re-entry record for

2    August 29, 2013, which shows that defendant presented his

3    LPR card as proof of permission to enter, and be present

4    in, the United States.  The government expects direct

5    examination to last approximately 10 to 15 minutes.

6    Defense counsel has advised they expect cross-examination

7    to last the same amount of time as direct examination.

8  **B.   Government's Exhibits**

9        The government intends to admit the following types of exhibits

10   at trial, in addition to the witness testimony referenced above:

11       • <u>Certified Records from Guatemalan Criminal Case</u>:  The

12       judgments of the trial court, mid-level appellate court,

13       Guatemalan Supreme Court, as well as warrants that were

14       issued by those courts.  The records, which were obtained

15       by Mutual Legal Assistance Treaty ("MLAT") are self-

16       authenticating records and are admissible pursuant to Rules

17       802, 803(6), 803(8), 803(16), 803(22), 807, 901, 902(3),

18       and 902(4), and 18 U.S.C. § 3505.  The Court has ruled the

19       records admissible here.  <u>See</u> Order Re: Government's and

20       Defendant's *Motions in Limine* and Defendant's Motion to

21       Dismiss (Dkt. 88), at *3-4.

22       • <u>Excerpts from the Certified Copy of Defendant's A-</u>

23       <u>File</u>: Defendant's I-589 application for asylum, I-485

24       application for LPR status, photographs, fingerprints,

25       sample signatures, and other documents from his A-File are

26       admissible and self-authenticating public records and

27       party-opponent admissions under Rules 801(d)(2), 803(8),

28       902(1), 902(2), 902(4).

- **Photographs and identifying documents**: Photographs of defendant, including from his Guatemalan police personnel file, photographs of the two murder victims, photographs from defendant's passport and identification documents, and other forms and documents bearing defendant's signature and photograph.  These records are also self-authenticating and admissible under 802, 803(6), 803(8), 803(16), 803(22), 807, 901, 902(3), 902(4), and 18 U.S.C. § 3505.

## C.   Defendant's Case-in-Chief Witnesses

The defense has not informed the government of the specific witnesses or number of witnesses they anticipate calling in their case-in-chief.  Defendant has notified two experts, one of which has been excluded by the Court's prior ruling on motions *in limine*:

- Professor Anne Schaufele, a defense expert witness who will testify, according to defendant's expert notice, as to the "general process by which immigrants hire notarios to help them with the immigration process," and how notarios "sometimes exploit immigrant communities and provide questionable legal advice."  The Court denied the government's motion *in limine* to exclude this expert as irrelevant to the facts of this case, but cautioned defendant that the expert should not be used as a conduit to admit hearsay or inadmissible evidence, and that the government may renew its objection to the expert testimony at trial if the facts do not "fit" the purported expert testimony.

- Professor Anita Isaacs, a defense expert who was to testify, according to defendant's expert notice, as to the

7

"Guatemalan civil war, lasting between 1960 and 1996" and that the "judicial system was unreliable and largely corrupt."  This expert testimony was excluded by the Court in its order on the parties' motions *in limine*: "The Court does not intend, however, to allow either party to explore the validity of Defendant's underlying conviction or to otherwise delve into details about the Guatemalan legal system beyond those details of the conviction relevant for the reasons noted above.  It is beyond the scope of this case to delve into issues relating to whether corruption tainted defendant's foreign proceedings.  Such evidence will be excluded under Rule 403 because its probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, and causing undue delay." Accordingly, Professor Isaac's testimony should not be permitted.  Order Re: Government's and Defendant's *Motions in Limine* and Defendant's Motion to Dismiss (Dkt. 88), at *4.

**D.    Government's Rebuttal Case**

The government reserves the right to call rebuttal witnesses depending on defendant's case-in-chief.

**V.   LEGAL AND EVIDENTIARY ISSUES**

**A.    Documentary Evidence**

1.   <u>Defendant's Guatemalan Criminal Conviction Records are Self-Authenticating and Admissible</u>

The certified records of defendant's Guatemalan legal proceedings, obtained by Mutual Legal Assistance Treaty ("MLAT"), are self-authenticating and admissible.  This issue was briefed, in two

8

motions in *limine* filed by the government and defendant, and the Court has held the records admissible.  See Order Re: Government's and Defendant's *Motions in Limine* and Defendant's Motion to Dismiss (Dkt. 88), at *3-5.

The Court held that the records, as well as the underlying facts of defendant's criminal prosecution are relevant and admissible:

> The Court further finds that the Certified Records of Guatemalan Criminal Proceedings are admissible to permit the Government to attempt to meet its burden and satisfy the causal inquiry between Defendant's alleged knowing false statement and his procurement of LPR status.  See United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995) (evidence may be "inextricably intertwined" which charged crime where it constitutes part of transaction that serves as basis for criminal charge or to permit prosecutor to offer a coherent and comprehensible story regarding commission of the crime).  Evidence regarding Defendant's status as Chief of the National Police, that he was convicted of double murder and sentenced to 30 years in prison, that his conviction was reversed but then reinstated by the Supreme Court of Guatemala, and that a warrant was issued for his arrest are all highly probative or his alleged intent and motive to knowingly provide false information on his Form I-485 in order to avoid detection and unlawfully procure LPR status. Without the facts showing the seriousness of the underlying criminal proceedings, a jury will not have the means to assess Defendant's credibility or state of mind.  In order to avoid any Rule 403 concerns, the Court will exclude any potentially inflammatory details related to the double murders.  See Fed. R. Evid. 403.

The certified records are lengthy and include discussions of murders as well as charges unrelated to defendant's case.  The government has therefore proposed redactions and admission of excerpts of the certified records such that only the facts relevant to defendant's charges are admitted.  Pursuant to the Court's order, the government does not intend to introduce inflammatory details of the murders, including discussion of autopsy results, descriptions of signs of torture, or inflammatory photographs or descriptions of the states of the bodies.  The government does intend, however, to

introduce the certified records which themselves lay out the facts
and circumstances of the crimes; namely, that defendant, just prior
to the kidnapping and murders, had ordered confidential police
investigations of the two victims; that the two victims were students
who were organizing protests against the police; that the two
students were kidnapped in broad daylight by members of the police
force; that days after they were kidnapped, their bodies were found
dumped on the side of the road; and that they died by stabbing.

2.   Defendant's A-File and Other Public Records are Also
Self-Authenticating and Admissible

The government also intends to introduce certain public
records, including passports, identification cards, and immigration
documents from defendant's alien file, also known as his "A-File,"
namely his application for asylum, his application for LPR and
related documents, and testimony about these documents.  These
documents are self-authenticating under Fed. R. Evid. 902(1), (2),
(4), as the government has obtained a certified copy of defendant's
A-File.  The government need not call a custodian to lay foundation
for self-authenticating documents, including those that are signed
and sealed under Rule 902(1), 902(2), and 902(4).  Moreover, the
contents of the A-File may be admitted into evidence under the
public-records exception to the hearsay rule, Federal Rule of
Evidence 803(8).  United States v. Hernandez-Herrera, 273 F.3d 1213,
1217 (9th Cir. 2001); United States v. Loyola-Dominguez, 125 F.3d
1315, 1317-18 (9th Cir. 1997) (A-File documents, including a warrant
of deportation, an arrest warrant, and an Order to Show Cause, were
properly admitted as public records).

Here, the government intends to introduce multiple documents

from defendant's A-File.  They are admissible and self-authenticating as signed, sealed, and certified documents.  See supra.  Further, the documents are not "testimonial" in nature and therefore do not implicate the Confrontation Clause or Crawford v. Washington, 541 U.S. 36 (2004).  United States v. Rueda-Rivera, 396 F.3d 687 (5th Cir. 2005) (holding contents of an immigration file are akin to business records and, thus, not testimonial in nature).

In addition, the government also specifically intends to introduce the annotated version of defendant's I-485 application for LPR, with notes and annotations from the Adjudications Officer who interviewed defendant.  This document is further admissible as both an admission of a party-opponent under Federal Rule of Evidence 801, and, alternatively, under the public-record hearsay exception in Federal Rule of Evidence 803(8).  United States v. Santos, 947 F.3d 711, 723 (11th Cir. 2020) (annotated form with officer's red ink markings was admissible under hearsay exceptions).  Specifically, the government intends to introduce the annotated I-485, which contains two levels of defendant's admissions.  First, the form contains defendant's answers when he first completed the application under penalty of perjury in September 1997.  Second, the red markings on the form are defendant's adoptive admissions, as Officer Tate marked defendant's answers to the I-485 questions again during his September 2000 interview and defendant adopted those admissions stating, under penalty of perjury, that they were correct.  These qualify as both adoptive admissions under Rule 801(d)(2)(B) and public records under Rule 803(8).  Santos, 947 F.3d. at 724-27.

Finally, defendant's statements, if made in the context of an immigration proceeding, like the LPR interview here, are admissible

11

1  in a criminal proceeding even if the statements were made without a

2  <u>Miranda</u> warning.  <u>United States v. Solano-Godines</u>, 120 F.3d 957,

3  960-61 (9th Cir. 1997).

4          3.   <u>Duplicates and Copies</u>

5       Some of the documents the government intends to introduce,

6  including certified conviction records, photographs and other

7  documents obtained by MLAT, and defendant's A-file documents are

8  duplicates and copies of the originals.  A duplicate is admissible to

9  the same extent as an original unless (1) a genuine question is

10  raised as to the authenticity of the original, or (2) under the

11  circumstances, it would be unfair to admit the duplicate instead of

12  the original.  Fed. R. Evid. 103; <u>United States v. Smith</u>, 893 F.2d

13  1573, 1579 (9th Cir. 1990).

14          4.   <u>English Translations of Spanish Language Records</u>

15       Some of the government's documentary evidence, including the

16  certified Guatemalan court records, are written in Spanish and thus,

17  are accompanied by a certified English-language translation of the

18  document or excerpts of the document.

19       When another language is used at trial, the English translation,

20  not the original Spanish document, should be admitted as evidence.

21  <u>United States v. Taghipour</u>, 964 F.2d 908, 910 (9th Cir. 1992); <u>see</u>

22  <u>also</u> Model Ninth Circuit Jury Instructions 2.9, 6.17.  Accordingly,

23  the English translation of the foreign language document is properly

24  admitted into evidence.  <u>Taghipour</u>, 964 F.2d at 910, n.1; <u>United</u>

25  <u>States v. Fuentes-Montijo</u>, 68 F.3d 352 (9th Cir. 1995), <u>opinion</u>

26  <u>supplemented</u>, 74 F.3d 1247 (9th Cir. 1996) (in the case of recorded

27  foreign language conversations, transcripts containing an English

28  translation is the best evidence of the conversations, not the tape).

To preclude the admission of a foreign language translation, the defendant has the burden or showing that the translation is inaccurate and that the defendant is prejudiced by the use of the translation.  See, e.g., United States v. Armijo, 5 F.3d 1229, 1234-35 (9th Cir. 1993); United States v. Pena-Espinoza, 47 F.3d 356, 360 (9th Cir. 1995); United States v. Font-Ramirez, 944 F.2d 42, 48 (1st Cir. 1991), cert. denied, 502 U.S. 1065 (1992) (no abuse of discretion to admit transcript where defendant failed to meet burden of showing inaccuracies or offering alternative transcript).

Here, the government produced certified translations of Spanish language documents the government intends to offer into evidence. Defendant has not asserted any objections, nor provided any corrections or alternative translations to those produced by the government.  As such, admission of the foreign language translations of such documentary evidence is proper here.  Pena-Espinoza, 47 F.3d at 358.

**B.  Stipulations**

Defendant has stated to government counsel, as well as to the Court, that identity will not be contested in this case. Specifically, the defense has stated defendant will stipulate that he is, in fact, the individual who was tried and convicted in Guatemala. In fact, the Court excluded as a government witness the sister of one of the murder victims, who was to testify regarding defendant's identity as the individual tried and convicted in Guatemala, on the basis of defendant's intent to stipulate to identity.  See Order Re: Government's and Defendant's *Motions in Limine* and Defendant's Motion to Dismiss (Dkt. 88), at *5 ("Based on the Government's description of her anticipated testimony, the Court finds that it should be

excluded as its probative value is substantially outweighed by the danger of unfair prejudice, so long as Defendant stipulates that he is, in fact, the individual charged in the underlying Guatemalan criminal proceedings and does not dispute identity, as appears to be the case."). Therefore, the government will not call the victim's sister, or it's fingerprint experts, to testify that defendant is, in fact, the same individual who was arrested, tried, and convicted of double murder in Guatemala.

Similarly, to avoid further expert testimony regarding identity, the government has proposed a stipulation regarding defendant's signature on his immigration papers being his genuine and true signature.

The government has provided the foregoing stipulations to the defense contemporaneously with the filing of this memorandum. To the extent the defense backtracks on these agreements, the government reserves the right to call additional witnesses and experts regarding identity.

### C. Defendant's Experts Cannot Testify to Defendant's and Others' Hearsay

The defense has provided the government notice of expert testimony as noted above. To the extent either of these experts are permitted to testify, any hearsay statements from defendant and others that defendant attempts to admit through any experts are inadmissible.

Under Federal Rule of Evidence Rule 703, if "the facts or data" the expert relies on to reach his conclusion "would otherwise be inadmissible," "the proponent of the opinion may disclose them to the jury <u>only</u> if their probative value in helping the jury evaluate the

opinion <u>substantially outweighs</u> their prejudicial effect."  Fed. R.
Evid. 703 (emphasis added).  The government recognizes that the
defense experts may rely on hearsay to reach their opinions.  But
while experts may rely on hearsay to reach their opinions, the "facts
and data" relied upon, to wit, the out-of-court statements, are still
otherwise inadmissible because they are plainly hearsay.  Fed. R.
Evid. 703.

     "Rule 703 is not, itself, an exception to or exclusion from
the hearsay rule or any other evidence rule that makes the underlying
information inadmissible."  <u>In Re Bard IVC Filters Products Liability</u>
<u>Lit.</u>, No. CV-16-00474-PHX-DGC, 2018 WL 1109554, at *9 (D. Ariz. March
1, 2018) (quoting 4 Weinstein's Federal Evidence § 703.05).  Indeed,
the Ninth Circuit has cautioned courts to ensure that experts are not
"used as little more than a conduit or transmitter for testimonial
hearsay."  <u>United States v. Vera</u>, 770 F.3d 1232, 1237 (9th Cir. 2014)
(noting that courts should police expert testimony to avoid this
issue).  "If an expert simply parrots another individual's out-of-
court statement, rather than conveying an independent judgment that
only incidentally discloses the statement to assist the jury in
evaluating the expert's opinion, then the expert is, in effect,
disclosing that out-of-court statement for its substantive truth; the
expert thereby becomes little more than a backdoor conduit for an
otherwise inadmissible statement."  <u>United States v. Garcia</u>, 793 F.3d
1194, 1212 (10th Cir. 2015).

     In this case, any hearsay statements that the defense experts
offer are highly prejudicial and their probative value is greatly
outweighed by their prejudicial effect and the government's inability
to cross-examine the declarant of those statements.  Accordingly, the

1    defense experts should be prevented from merely backdooring hearsay
2    to the jury.

    **D.   Cross-Examination of Defendant**

4        A defendant who testifies at trial waives his right against
5    self-incrimination and subjects himself to cross-examination
6    concerning all matters reasonably related to the subject matter of
7    his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759
8    (2000) ("It has long been held that a defendant who takes the stand
9    in his own behalf cannot then claim the privilege against cross-
10   examination on matters reasonably related to the subject matter of
11   his direct examination.").  A defendant has no right to avoid cross-
12   examination on matters that call into question his claim of
13   innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54
14   (9th Cir. 1981).  The scope of a defendant's waiver is co-extensive
15   with the scope of relevant cross-examination.  United States v.
16   Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black,
17   767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually
18   discusses on direct does not determine the extent of permissible
19   cross-examination or his waiver.  Rather, the inquiry is whether 'the
20   government's questions are reasonably related' to the subjects
21   covered by the defendant's testimony.").

22       Should defendant testify, the government may question him
23   regarding his criminal history and any conduct he engaged in to evade
24   detection.

    **E.   Defendant's Prior Statements**

        1.   Admissible When Offered by the Government

27       Statements by defendant are admissible as admissions by a party
28   opponent and are not hearsay when offered by the government.  Fed. R.

Evid. 801(d)(2)(A).  Here, defendant's statements from a variety of sources, including his LPR application, interview, and his statements in the underlying Guatemalan criminal case, among others, can be used against him if the government introduces them against defendant.

## 2.   Inadmissible When Offered by Defendant

While the government may present evidence regarding a defendant's statements, a defendant is not entitled to elicit his own prior statements from other witnesses or recordings under Federal Rule of Evidence 801(d)(2)(A) because they are hearsay.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).  To permit otherwise would place a defendant's statements "before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids."  Id. at 682 (district court properly granted the government's motion in limine to exclude introducing defendant's post-arrest statements through cross-examination of agent).  Further, when the government introduces some of a defendant's prior statements, the door is not thereby opened for the defendant to introduce all of his out-of-court statements, because, when offered by defendant, they are hearsay.  United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

## 3.   Defendant's Prior Inconsistent Statements and Waiver of Privilege

If defendant testifies, the government reserves the right to introduce defendant's conflicting statements to counsel and others regarding the circumstances surrounding his 1997 LPR application. Specifically, defendant has told two different (and conflicting) versions of his story regarding his application for adjustment of status.  At times, defendant has claimed that he did not fill out the

1  application himself and never saw or answered the question asking

2  about his criminal history.  See Transcript of December 19, 2022

3  Hearing, attached hereto as Exhibit A, at 9-11 (defense counsel

4  describing statements by defendant that he did not fill out his LPR

5  application himself and signed it without reading it).  At other

6  times, defendant has claimed that he read the application and filled

7  it out himself but misunderstood the questions.  See Exhibit A at 13-

8  16 (defense counsel describing statements by defendant that he read

9  the LPR application and filled it out himself, but misunderstood the

10 question).  Defendant's conflicting statements are directly relevant

11 to the issues to be tried and are admissible as non-hearsay

12 admissions of a party opponent pursuant to Rule 801(d)(2).

13      Further, any privilege that previously applied to such

14 statements has been unequivocally waived.  Mid-questioning, counsel

15 for the government and the Court warned defendant regarding a

16 potential waiver of privilege:

17      MR. MOGHADDAS: Your Honor, I just want to -- for

18      the record, it sounds like we are getting into some potential

19      attorney-client privilege.  I just want to make sure it's

20      deliberate and intentional on the part of the defense.  I just

21      want the record to be clear of that for any sort of future

22      proceeding.

23      THE COURT: Well, if she's getting into

24      attorney-client information, that's their prerogative to waive.

25      MR. MOGHADDAS: Absolutely. I just want the record

26      to be clear.

27      Following these explicit warnings from government counsel and

28 the Court, defense counsel continued to divulge the contents of

communications, thereby effectuating a voluntary and deliberate waiver of privilege.  <u>See</u> <u>United States v. Plache</u>, 913 F.2d 1375, 1379 (9th Cir. 1990) ("The privilege may be waived by voluntary disclosure.").[2]  Accordingly, the government is permitted to question defendant (or any other appropriate witnesses) regarding these prior inconsistent statements by defendant.

### F.   Jury Nullification

As this Court has already held, defendant is not entitled to make any arguments to suggest jury nullification.  Order Re: Government's and Defendant's *Motions in Limine* and Defendant's Motion to Dismiss (Dkt. 88), at *5.  This includes any evidence or argument about:

- The political climate relating to immigration policy or country conditions in Latin America;

- The passage of time, age, and assimilation of defendant since he fraudulently obtained LPR status; and

- The punishment, including deportation consequences, in the event defendant is convicted.

---

[2] Any argument that such disclosure was inadvertent must fail. Both the government and the Court explicitly flagged the privilege issue and warned defense counsel regarding waiver if the line of questioning continued.  <u>See</u> <u>Exhibit A</u> at 14 ("THE COURT: Well, if she's getting into attorney-client information, that's their prerogative to waive.").  Defense counsel's intentional decision to continue with her line of questioning and disclosure of privileged communications thus cannot now be labeled "inadvertent."  Moreover, the Ninth Circuit has held that "'inadvertence' of disclosure does not as a matter of law prevent the occurrence of waiver."  <u>Plache</u>, 913 F.2d at 1380 (citing <u>Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.</u>, 647 F.2d 18, 24 (9th Cir. 1981)).  The instant disclosure, in any event, was not inadvertent.  As noted above, these statements were purposefully divulged following explicit warnings, unlike situations where parties may inadvertently produce privileged materials in discovery.  Accordingly, to the extent defendant attempts to argue the disclosure was inadvertent, such arguments must fail.

It is well-established that a defendant does not have a right to a jury nullification instruction. <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1992). Having no right to seek jury nullification, defendant has no right to present evidence relevant only to such a defense. <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant."). And, in any event, under Federal Rules of Evidence 401 and 403, such arguments or evidence are not relevant to any valid defense to the offense charged and will unnecessarily confuse the issues and mislead the jury. Accordingly, such arguments and evidence are improper and warrant exclusion.

### G.   Character Evidence

Pursuant to the Court's order on the government's motion *in limine* regarding jury nullification, defendant should not be permitted to present evidence regarding his assimilation and law-abiding nature since he obtained LPR status. However, in the event defendant attempts to circumvent the order and attempts to elicit character evidence regarding defendant's character, and the Court permits such character witnesses, the government provides the following statement of law regarding character evidence.

Generally, evidence of a person's character is not admissible to prove that a person acted in conformity therewith. However, under Federal Rule of Evidence 404(a)(1), a defendant may elect to offer evidence of "a pertinent trait of character." If a defendant offers

such evidence, the prosecution may offer evidence "to rebut the same."  Fed. R. Evid. 404(a).

Defendant's character witness testimony should only be limited to relevant character evidence.  In limiting a defendant's introduction of character evidence, the first issue to consider is whether the testimony is "pertinent" to the crimes charged in the indictment.  In Rule 404(a)(1), "pertinent" is read as synonymous with "relevant."  United States v. Angelini, 678 F.2d 380, 381 (1st Cir. 1982).

The relevance of a particular character trait depends upon the crime charged.  If relevant to the charge, a defendant's character witness may offer their opinion as to defendant's character trait for law-abidingness.  United States v. Diaz, 961 F.2d 1417, 1419 (9th Cir. 1992).  However, testimony as to a defendant's propensity to violate immigration law would not be an admissible character trait. Id.  Therefore, it follows that testimony about a defendant's lack of prior bad acts is also not admissible.

Should defendant call a character witness to testify, there may be a question concerning the scope of direct and cross-examination. As a general rule, character witnesses called by the defendant may not testify about specific acts demonstrating a particular trait or other information acquired only by personal observation and interaction with the defendant; the witness must summarize the reputation or opinion of the defendant as known in the community. Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 477 (1948); United States v. Hedcorth, 873 F.2d 1307, 1313 (9th Cir. 1989).

Defendant's character witness cannot testify to specific instances of conduct, including specific instances of truthfulness. A defendant may introduce specific instances of character only where character or trait of character "is an essential element of a charge, claim, or defense."  Fed. R. Evid. 405.  The Advisory Committee Notes to Federal Rule of Evidence 405 explain that:

> [T]he rule confines the use of evidence of [specific instances of conduct] to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry.  When character is used circumstantially, and hence occupies a lesser status in the case, proof may only be by reputation and opinion.

For example, instances of good conduct may be allowed in a case where the defendant raises a claim of entrapment because predisposition to commit the crime, and therefore character, becomes an essential element of the crime.  United States v. Thomas, 134 F.3d 975, 980 (9th Cir. 1998).

However, in most cases, Rule 405 precludes a defendant from eliciting evidence of specific acts to demonstrate good character. Thus, any testimony regarding specific instances of a defendant's good character, for example, that a defendant is a loyal American, or is a legitimate businessman, or is devoted to his family, or has not had any problems with the law, is (in addition to being a violation of the Court's order regarding jury nullification) specifically prohibited by the rules of evidence.  Moreover, specific good deeds cannot be introduced to negate intent elements of a crime.  United States v. Doyle, 130 F.3d 523, 542 (2d Cir. 1997) (quoting J. Weinstein, M. Berger & J. McLaughlin, 2 Weinstein's Federal Evidence § 405.05[4] (1997).

On cross examination of a defendant's character witness, however, the government may inquire into specific acts of defendant's past conduct relevant to the character trait at issue. Fed. R. Evid. 405(a). In particular, a defendant's character witness may be cross-examined about their knowledge of defendant's past crimes, wrongful acts, and arrests. <u>Michelson</u>, 335 U.S. at 479, 481 n.18. The only prerequisites are (1) that there be a good faith basis that the incidents inquired about occurred and (2) that the incidents are relevant to the character trait at issue. <u>United States v. McCollom</u>, 664 F.2d 56, 58 (5th Cir. 1981).

However, the government does not believe that character is at issue here, or that character witnesses should be permitted under Rule 405 or the Court's prior order regarding jury nullification.

## H. Reciprocal Discovery

The government has made multiple requests to defendant for all reciprocal discovery to which the government is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure. To date, defendant has not produced any reciprocal discovery. To the extent defendant may attempt to introduce or use any documents at trial that he has not produced, the government reserves the right to object and to seek to have such documents precluded. Further, the government reserves the right to object and seek to preclude any expert opinion testimony offered by defendant at trial because defendant has failed to provide notice under Rule 16(b)(1)(C).

**VI.   CONCLUSION**

The government respectfully requests leave to supplement this Trial Memorandum, as necessary.


Dated: January 17, 2023          Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 MACK E. JENKINS
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 _____/s/_____
                                 JOSHUA O. MAUSNER
                                 ALI MOGHADDAS
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA